

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00029-CR

Andre J. **CHAMPAGNE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR8175
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice
              Irene Rios, Justice

Delivered and Filed:  January 17, 2018

AFFIRMED

A jury found Andre Champagne guilty of the offense of driving while intoxicated. The trial court assessed punishment at three years' imprisonment and a $1,500 fine. In a single issue on appeal, Champagne contends the trial court erred by admitting a video recording of his statements to a police officer in violation of his right to remain silent. We affirm the trial court's judgment.

### BACKGROUND

On November 26, 2014 San Antonio Police Department (SAPD) Officer Senovio Elizondo responded to a call regarding a two-vehicle collision. Upon arriving at the scene of the collision,

Officer Elizondo learned one of the vehicles involved in the collision fled the scene. While searching for the fleeing vehicle, Officer Elizondo saw an oil trail on the roadway. Officer Elizondo followed the oil trail, which led him to a parking lot where he encountered a damaged pickup truck driving slowly through the lot. Upon stopping the truck, Champagne, the driver of the pickup truck, immediately exited the pickup truck and put his hands up. Officer Elizondo handcuffed Champagne and placed him in the back seat of the patrol car. Officer Elizondo then requested the DWI unit to respond to the scene to perform DWI testing on Champagne. According to Officer Elizondo, he did not arrest Champagne, but merely detained him until the DWI unit arrived.

Officer Rivas of the SAPD DWI unit responded to Officer Elizondo's call for DWI assistance. Upon arrival, Officer Rivas removed Champagne's handcuffs and informed him he was not under arrest, but was only detained for investigation. Officer Rivas advised Champagne of his rights and interviewed him for several minutes. Ultimately, Officer Rivas arrested Champagne for driving while intoxicated.

During the jury trial, the trial court admitted the dashboard camera video from Officer Rivas's patrol car over Champagne's objection. The jury found Champagne guilty of the offense of driving while intoxicated. This appeal followed.

## ANALYSIS

Champagne contends the trial court erred by admitting Officer Rivas's dashboard camera video into evidence. Champagne argues he was in custody from the time Officer Elizondo handcuffed him and placed him in the back of the patrol car, and that he remained in custody when Officer Rivas arrived, removed the handcuffs, and interviewed him. Champagne argues that during the interview, he unequivocally invoked his right to remain silent. Champagne further argues that by continuing to question him, Officer Rivas violated Champagne's constitutional right to remain

silent, and thus the video recording of Champagne's responses and refusals to submit to the field sobriety tests was inadmissible at trial.

## Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion unless its ruling lies outside the zone of reasonable disagreement. *Id.* The trial court's ruling admitting or excluding evidence will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

## Custodial Interrogation

For a statement obtained during a custodial interrogation to be admissible against a suspect, the United States Constitution requires the suspect be warned by police that "he has the right to remain silent, that any statement he does make may be used against him, and that he has the right to the presence of an attorney." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Texas law additionally requires that police inform the suspect he has the right to terminate the interview at any time. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2016); *Williams v. State*, 257 S.W.3d 426, 432 (Tex. App.—Austin 2008, pet. ref'd) ("The right to terminate questioning is among the procedural safeguards that *Miranda* establishes" to protect the Fifth Amendment right to remain silent.). This right requires police officers to immediately terminate questioning when a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Ramos*, 245 S.W.3d at 418 (quoting *Miranda*, 384 U.S. at 473–74). If a statement is governed by *Miranda*, i.e., the statement is made while a suspect is in custody, the "failure to cut off questioning after a suspect invokes his right to remain silent violates his rights and renders

any subsequently obtained statements inadmissible." *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).

To preclude a statement from being used against him at trial, a defendant bears the initial burden of proving the subject statement was the product of custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). Thus, we must first address whether Champagne was in custody during Officer Rivas's questioning. *See id.*

**Custody**

In evaluating whether an individual was in custody, we must determine whether, given the circumstances surrounding the interrogation, a reasonable person would have perceived detention by law enforcement officers to be a restraint on his movement comparable to the restraint of formal arrest. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). An assessment of whether a suspect has been detained to the degree associated with arrest is made on a case-by-case basis. *Dowthitt*, 931 S.W.2d at 255.

The Court of Criminal Appeals describes "at least four general situations that may constitute custody:"

> (1) when the suspect is physically deprived of his freedom in any significant way, (2) when a law enforcement officer tells the suspect he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave.

*State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013) (quoting *Dowthitt*, 931 S.W.2d at 255). "The first three situations require that the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative detention." *Id.* (quoting *Dowthitt*, 931 S.W.2d at 255). Although the fourth situation requires that an officer's knowledge of probable cause be manifested to the suspect, custody is not established unless that manifestation

of probable cause combined with other circumstances, such as duration or factors relating to the exercise of police control over the suspect, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

> In evaluating whether a reasonable person would believe his freedom has been restrained to the degree of formal arrest, [we] look[] only to the objective factors surrounding the detention. The subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody. But if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody. Conversely, any undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration—the reasonable person standard presupposes an "innocent person."

*State v. Ortiz*, 382 S.W.3d 367, 372–73 (Tex. Crim. App. 2012) (references omitted).

On the other hand, a person held for investigative detention is not in "custody." *Dowthitt*, 931 S.W.2d at 255. An investigative detention involves detaining a person reasonably suspected of criminal activity in order to determine his identity or to momentarily maintain the status quo in order to garner more information. *Terry v. Ohio*, 392 U.S. 1, 20–21 (1968). This sort of "*Terry* stop" must be a temporary detention, must last no longer than necessary to effectuate the purpose of the stop, must involve actual investigation, and must use the least intrusive means possible. *See Davis v. State*, 947 S.W.2d 240, 244–45 (Tex. Crim. App. 1997) (holding that detention may continue only so long as "articulable facts" support reasonable suspicion that suspect was engaged in criminal activity).

There is no bright-line rule establishing a person who is handcuffed is per se in custody. *Matter of S.C.*, 523 S.W.3d 279, 283 (Tex. App.—San Antonio 2017, pet. denied). Handcuffing for purposes of an investigative detention—including investigation, maintenance of the status quo, and officer safety—does not necessarily give rise to a custodial interrogation. *Id.* A suspect who is temporarily handcuffed and placed in the back of a patrol car for purposes of an investigatory

detention is not necessarily in custody, particularly when the officer tells the suspect he is not under arrest. *Id.* If an officer tells an individual he is not under arrest, this is the "[m]ost important" circumstance offsetting physical restraint in determining whether the individual is in custody under *Miranda*. *Id.* (quoting *Howes v. Fields*, 565 U.S. 499, 515–16 (2012)).

**Discussion**

During the jury trial, the state presented the testimony of SAPD Officers Senovio Elizondo and Steven Rivas. The state also introduced into evidence the dashboard camera video from both Officer Elizondo's patrol car and Officer Rivas's patrol car. The videos were played during the officers' testimony.

The video from Officer Elizondo's dashboard camera shows Officer Elizondo followed an oil trail from the scene of an accident to a parking lot, where he encountered Champagne driving slowly through the lot. Officer Elizondo was the only officer at the scene when he encountered Champagne in the parking lot. Upon stopping, Champagne immediately exited the pickup truck without any prompting by Officer Elizondo. Officer Elizondo testified he told Champagne he handcuffed him and placed Champagne in the patrol car for both his and the officer's safety. Officer Elizondo kept Champagne in the back of the patrol car while waiting for the DWI unit to arrive.

When Officer Rivas arrived, he removed Champagne's handcuffs. The video from Officer Rivas's dashboard camera shows that after removing Champagne's handcuffs, Officer Rivas told Champagne, "Right now you're not under arrest … right now you're just being detained, okay? You are under investigation." Officer Rivas then advised Champagne of his rights and interviewed him. Champagne contends that during the interview, he invoked his right to remain silent when, after Officer Rivas asked him what happened to him that night, Champagne responded, "You know, I just thought I had the right to remain silent." Officer Rivas continued questioning

Champagne, who denied he had been drinking and refused to perform any of the field sobriety tests requested by Officer Rivas. Officer Rivas testified he arrested Champagne for driving while intoxicated based on the totality of the circumstances, including Champagne's bloodshot eyes, the strong odor of intoxicants on his breath, his slurred speech, and his lack of balance.

The record in this case indicates Champagne was not in custody during the time he was handcuffed in Officer Elizondo's patrol car or being questioned by Officer Rivas. Rather, he was merely detained for officer safety and investigatory purposes. Although the officers in this case physically deprived Champagne of his freedom of movement and Officer Elizondo acknowledged Champagne was not free to leave while he was handcuffed in the patrol car, an officer may handcuff a suspect to detain him for purposes of officer safety and to preserve the status quo. *Matter of S.C.*, 523 S.W.3d at 284. Officer Elizondo testified he told Champagne he handcuffed Champagne for both his and the officer's safety. At the time, Officer Elizondo was the only officer on the scene and Champagne, upon stopping, immediately exited the pickup truck without any prompting by Officer Elizondo. *See Rhodes v. State*, 913 S.W.2d 242, 247 (Tex. App.—Fort Worth 1995), aff'd, 945 S.W.2d 117–18 (Tex. Crim. App. 1997) (holding defendant was merely detained where officer testified he handcuffed defendant primarily out of concern for officer safety and officer was alone with the defendant in the dark). Further, handcuffing Champagne preserved the status quo, i.e., prevented Champagne from attempting to leave the scene while they waited on the DWI unit to arrive. Notably, once the second officer arrived on the scene, the handcuffs were removed from Champagne.

Moreover, courts have held that an important factor in determining whether a defendant is in custody is whether an officer tells the suspect he is not under arrest and only being detained. *See Matter of S.C.*, 523 S.W.3d at 284. (holding defendant was merely detained for investigative purposes when officers handcuffed him and placed him in the back of patrol car, but told him he

was not arrested and only being detained). In this case, Officer Rivas explained to Champagne he was not under arrest, but was being detained for an investigation. Furthermore, probable cause to arrest Champagne for driving while intoxicated did not arise until after the interview, during which Officer Rivas observed Champagne's bloodshot eyes, the strong odor of intoxicants on his breath, his slurred speech, and his lack of balance.

This case is factually analogous to *Hauer v. State*, where our sister court held the defendant was merely detained for investigative purposes where an officer was the only officer on the scene, handcuffed the defendant, and placed him in the back seat of the patrol car for thirty minutes while waiting on another officer to arrive to conduct a DWI investigation. *Hauer v. State*, 466 S.W.3d 886, 891–92 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Likewise, in this case Officer Elizondo was alone at the scene, handcuffed Champagne, and placed him in the patrol car while waiting on the DWI unit to arrive to conduct an investigation. Thus, Champagne was not under arrest while he was handcuffed in Officer Elizondo's patrol car or being questioned by Officer Rivas. Rather, he was merely detained for purposes of investigation and officer safety. *See id.*; *See also Hernandez v. State*, 107 S.W.3d 41, 47–48 (Tex. App.—San Antonio 2003, pet. ref'd) (holding defendant was merely detained for investigation while officer administered three field sobriety tests prior to full custodial arrest).

On the facts of this case, Champagne was not in custody for *Miranda* purposes until Officer Rivas formally arrested him after Champagne refused to perform any field sobriety tests. *See Hernandez*, 107 S.W.3d at 48. Although Officer Rivas advised Champagne of his rights prior to questioning him, doing so does not conclusively establish that Champagne was under arrest or in custody. *See Lopez v. State*, 314 S.W.3d 54, 59 (Tex. App.—San Antonio 2010, pet. ref'd).

Based on the evidence, we conclude the temporary restriction on Champagne's freedom of movement did not rise to the degree associated with an arrest and would not lead a reasonable

person to believe that he was under arrest. *See Matter of S.C.*, 523 S.W.3d at 284. Because Champagne was not in custody, the video relating his responses to Officer Rivas's questions and his refusals to submit to field sobriety tests was admissible at trial. *See Hernandez*, 107 S.W.3d at 48.

Defendant did not meet his initial burden of proving his statements to Officer Rivas were the product of custodial interrogation. *See Gardner*, 306 S.W.3d at 294. Having determined Champagne was not in custody at the time of the subject statements, we need not address his contention Officer Rivas violated his right to remain silent by failing to cut off questioning.

Accordingly, the trial court did not abuse its discretion by admitting into evidence Officer Rivas's dashboard camera video. We overrule Champagne's sole issue on appeal.

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, we affirm the judgment of the trial court.

Irene Rios, Justice

DO NOT PUBLISH