

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-22-00010-CR
_____

JOSHUA LEE WURTZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CR2021-0158

---

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

A jury found appellant Joshua Lee Wurtz guilty of possessing a gram or less of methamphetamine, a state jail felony, *see* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a), (b), after which the trial court sentenced Wurtz to confinement in a state jail for twelve months, *see* Tex. Penal Code Ann. § 12.35. Wurtz appealed; he raises three issues:

> 1. Did law enforcement violate Wurtz's Fourth Amendment right to be free from unreasonable search and seizure?
>
> 2. Should the evidence discovered in the unlawful search have been suppressed or excluded?
>
> 3. Was defense counsel ineffective by failing to file a motion to suppress the illegally obtained evidence and by failing to object to the introduction of the illegally obtained evidence at trial?

We hold that Wurtz failed to preserve his first two issues. And regarding Wurtz's third issue, the record, which does not contain defense counsel's explanations, does not support Wurtz's argument. Accordingly, we overrule all three issues and affirm the trial court's judgment.

## I. Background

A dispatcher directed Wichita Falls Police Officer Kaleb Littleton to a shots-fired call. Because of the call's nature, not only Officer Littleton but also numerous other officers went to the scene. At the scene, the street was full of people, some of whom were witnesses; they related to Officer Littleton that they had seen a person involved in the shooting and described him as wearing a red shirt and blue jeans. They

2

further indicated that the man had walked northbound and pointed in the direction that they had seen him walking.

Guided by this information, Officer Littleton drove northbound and, about a block or two away, saw a man who matched the witnesses' description, detained the man, and identified him as Wurtz. For officer safety, Officer Littleton patted Wurtz down, found nothing, handcuffed Wurtz, and placed him in the back of the patrol car. Officer Littleton maintained that he had only detained Wurtz and denied arresting him. When questioned about not finding a gun, Officer Littleton commented that based on his experience with calls of this nature, discarding a gun was very easy. Returning to the scene of the reported shots, Officer Littleton continued his investigation and found shell casings in the street.

Based on the location of the shell casings and information gathered from witnesses, Officer Littleton focused his investigation on a residence on 23rd Street. Specifically, the witnesses told Officer Littleton that two black males and a subject matching Wurtz's description had run into that house after the shots were fired. Officer Littleton was familiar with that particular house and knew it as a location from which narcotics were sold and distributed. And based on Officer Littleton's experience, drug houses and gun activity went together.

The occupants of the 23rd Street residence, however, refused to cooperate. Not having probable cause to make an arrest, Officer Littleton intended to release Wurtz.

Before releasing Wurtz, though, Officer Littleton asked for Wurtz's consent to search his person. Officer Littleton believed that he had taken Wurtz's handcuffs off before asking for consent but had not expressly told Wurtz that he was free to leave. After Wurtz gave verbal consent, Officer Littleton removed him from the back seat of the patrol car and conducted a roadside search. Officer Littleton found in the right front coin pocket of Wurtz's jeans a white crystal-like substance that he suspected, through his training and experience, to be methamphetamine, an illegal contraband. Officer Littleton performed a field test that came back presumptively positive for methamphetamine. Less than forty minutes elapsed from the time that Officer Littleton was dispatched (7:17 p.m.) to the time that he arrested Wurtz (7:56 p.m.).

Officer Littleton initially placed the substance that he found on Wurtz in the evidence room. Later, another officer sent it to a laboratory. A forensic scientist determined that the substance was methamphetamine weighing less than one gram.

## II. Discussion

### A. Search and Seizure

Wurtz's first two issues deal with Officer Littleton's search of Wurtz's person. In his brief, Wurtz acknowledges that his trial counsel did not file a motion to suppress and did not object to the disputed evidence when it was admitted at trial.[1] The State responds that Wurtz forfeited his first two issues because he never

---

[1] Trial counsel's failure to file a motion to suppress or object to the admission of the disputed evidence forms the basis of Wurtz's third issue—ineffective assistance of counsel.

presented his complaint to the trial court and never asked the trial court to suppress or exclude the allegedly inadmissible evidence. We agree.

To preserve an issue for appellate review, a party must make a sufficiently specific complaint and obtain an adverse ruling. *See* Tex. R. App. P. 33.1(a)(1)–(2). Without a motion to suppress and without an objection at trial, Wurtz failed to preserve any alleged error for appellate review. *See Black v. State*, 358 S.W.3d 823, 828–29 (Tex. App.—Fort Worth 2012, pet. ref'd). Appellate courts should not address unpreserved complaints on their merits. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Moody v. State*, 551 S.W.3d 167, 172 (Tex. App.—Fort Worth 2017, no pet.). We overrule Wurtz's first two issues as unpreserved.

## B. Ineffective Assistance of Counsel

In his third issue, Wurtz contends that his trial counsel rendered ineffective assistance because he did not file a motion to suppress or object to evidence that Wurtz alleges Officer Littleton illegally obtained. The State argues—and we agree—that the record does not support Wurtz's contention.

### 1. Applicable Law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104

S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim

6

because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

A trial attorney's failure to file a motion to suppress is not per se ineffective. *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.). An ineffective-assistance claim based on an attorney's alleged failure to file a motion to suppress cannot succeed unless the appellant shows that such a motion would have been granted and that the remaining evidence would not have been sufficient to support the conviction. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998); *see Hollis*, 219 S.W.3d at 456 ("Counsel is not required to engage in the filing of futile motions.").

## 2. Discussion

Wurtz's contention is not firmly founded in the record. As a preliminary matter, we note that an officer may place a detainee in the back of a patrol car during a temporary investigative detention. *See Hauer v. State*, 466 S.W.3d 886, 892–93 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Additionally, handcuffing a suspect does not turn a temporary investigative detention into an arrest. *State v. Sheppard*, 271 S.W.3d 281, 283 (Tex. Crim. App. 2008).

To the extent that Wurtz argues that he did not consent to the search, defense counsel argued that to the jury. Wurtz's consent was neither recorded nor in writing. The jury's verdict, however, reflects that it rejected that contention.

In his brief, Wurtz notes that during the punishment phase, he had denied giving consent. The punishment phase, however, also showed that Wurtz's memory was not trustworthy when he denied making another statement unrelated to the consent issue: "No. I absolutely did not say that." But—after being threatened with perjury (which failed to dissuade him) and after being confronted with a recording in which he made the disputed statement (which succeeded)—Wurtz conceded that he had made the statement: "I don't remember what I said. I apologize. Yes, that is what I told him. . . . I'm very sorry."

While it is clear what Wurtz told the trial court during the punishment trial, unknown is what Wurtz told his counsel before trial. If defense counsel had testified that Wurtz told him that he had consented to the search, that would be another piece of the puzzle. Even assuming the contrary—that Wurtz told his counsel that he had not consented—does not establish ineffective assistance per se because other factors might have potentially played a role in counsel's decision-making.

For example, although it is true that the jury did not have the benefit of Wurtz's punishment-trial testimony denying consent, it is also true that the jury did not have the benefit of Wurtz's 2014 conviction for possession of less than one gram of methamphetamine—a conviction with which the State likely would have tried to impeach Wurtz had he testified during the guilt–innocence trial.[2] *See* Tex. R. Evid.

---

[2]The punishment trial revealed that Wurtz had prior convictions for possession of less than one gram of methamphetamine (2014), possession of under two ounces

8

609. For our purposes, we do not need to speculate. The question is whether the record sufficiently supports Wurtz's ineffective-assistance contention, and it does not. We do not know counsel's reasoning.

And to the extent that Wurtz contends that his detention was not reasonably related in scope to the circumstances that justified the investigation in the first place, the parties never litigated that issue in the trial court. *See Hughes v. State*, No. 02-19-00114-CR, 2020 WL 6165413, at *2 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication). On this record, when another court has determined that a seventy-five-minute delay was not unreasonable, we cannot say—as a matter of law—that the less-than-forty-minute detention here was unreasonable. *See Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd). Because the issue was not raised in the trial court, the evidence and the arguments pertaining to that issue were not fleshed out.

Further, we do not have defense counsel's explanation regarding why he did not file a motion to suppress and object to the disputed evidence at trial. Before being denounced as ineffective, trial counsel should ordinarily be given an opportunity to explain his actions. *See Menefield*, 363 S.W.3d at 593. And the record, such as it is, does not allow us to conclude that the challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Nava*, 415 S.W.3d at 308.

---

of marijuana (2006), assault causing bodily injury family violence (2011), and criminal trespass (1998).

9

Because Wurtz has not carried his burden to show that his trial counsel rendered ineffective assistance, we overrule his third issue.

## III. Conclusion

Having overruled Wurtz's three issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 22, 2022