**Affirmed and Memorandum Opinion filed February 4, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00171-CR

**KYON ARSHAWNTO MITCHELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 15-DCR-072012C**

## M E M O R A N D U M   O P I N I O N

Appellant was arrested for charges stemming from a family violence incident. After trial, the jury found Appellant guilty of the misdemeanor offense of deadly conduct and the felony offense of aggravated assault with a deadly weapon. In two issues, Appellant challenges the trial court's denials of his motion to suppress evidence and motion to quash the indictment. For the reasons below, we affirm.

## BACKGROUND

During an altercation between Appellant, Complainant (Appellant's wife), and Complainant's daughter, Appellant was stabbed by Complainant's daughter. Appellant was transported to the hospital with a knife lodged in his back. While at the hospital, Appellant spoke with Detective Justin White regarding the incidents preceding the stabbing. Detective White recorded his interview with Appellant.

Appellant told Detective White that he and Complainant were intoxicated when they started arguing. Appellant said they started shoving and pushing each other and they both fell to the ground. Appellant said he was stabbed by Complainant's daughter while he and Complainant were on the ground.

Appellant was discharged from the hospital the same evening and, the following day, he returned to the house he shared with Complainant. Officers arrived at the house and arrested Appellant for a separate open warrant. While he was in jail, Appellant was arrested for charges arising from the incident with Complainant.

Appellant filed a motion to quash the indictment and a motion to suppress the audio recording of his hospital interview with Detective White. The trial court denied both motions. Appellant proceeded to a jury trial on two counts of felony aggravated assault. The jury returned guilty verdicts for the lesser-included misdemeanor offense of deadly conduct and for the felony offense of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.02(a)(2), 22.05(a) (Vernon 2019). The trial court assessed punishment at one year confinement for the first count and nine years' confinement for the second count. Appellant timely appealed.

ANALYSIS

Appellant asserts the trial court erred by denying (1) his motion to suppress the audio recording of his interview with Detective White, and (2) his motion to quash the indictment.

## I. Motion to Suppress

Citing Texas Code of Criminal Procedure articles 38.21 and 38.22, Appellant argues the trial court's denial of his motion to suppress constitutes an abuse of discretion because his decision to participate in the interview with Detective White was not voluntary.

### A. Standard of Review and Governing Law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Hauer v. State*, 466 S.W.3d 886, 890 (Tex. App.—Houston [14th Dist.] 2015, no pet.). First, we afford almost total deference to the trial judge's findings of historical fact as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013); *Hauer*, 466 S.W.3d at 890. The trial judge is the sole judge of a witness's credibility and the weight given to the witness's testimony. *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013).

Where, as here, the trial judge makes express findings of fact, we view the evidence in the light most favorable to her ruling and determine whether the evidence supports the factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Unless the trial court abused its discretion by making a finding not supported by the record, we defer to the trial court's fact findings and do not disturb those findings on appeal. *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex.

Crim. App. 2017).

We review *de novo* the trial court's application of the law to the facts. *Valtierra*, 310 S.W.3d at 447. We sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. at 447-48.

The statement of an accused may be used against him if the statement was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005). When the voluntariness of a statement is challenged, the trial court must make an independent determination as to whether the statement was voluntarily made. *Id*. art. 38.22, § 6 (Vernon Supp. 2017); *see also Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). The burden is on the State to show by a preponderance of the evidence that the statement was voluntarily made. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *Avellaneda v. State*, 496 S.W.3d 311, 316 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Pursuant to this standard, a statement is "involuntary" only if "there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado*, 912 S.W.2d at 211. The ultimate test is whether the defendant's will was "overborne" by police coercion. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Coleman v. State*, 440 S.W.3d 218, 223 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To make this determination, we examine the totality of the circumstances under which the statement was made. *Avellaneda*, 496 S.W.3d at 316. In addition to any allegedly coercive police conduct, we also may consider factors such as the defendant's youth, intoxication, intellectual disability, or other disability. *Oursbourn*, 259 S.W.3d at 172; *Umana*

4

*v. State*, 447 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

## B.    Application

Presuming Appellant preserved error with respect to this issue, the trial court's denial of his motion to suppress did not constitute an abuse of discretion.

Two witnesses testified at the hearing on Appellant's motion: Deputy Anthony La Rosae and Detective White.  Deputy La Rosae said he drove to Appellant's house in response to a police dispatch regarding a possible stabbing or weapon-involved disturbance.  After he arrived at the house, Deputy La Rosae saw Appellant sitting on the ground while being attended to by EMS personnel.  Deputy La Rosae did not speak to Appellant before Appellant was life-flighted from the scene.  Deputy La Rosae remained at the house and took statements from Complainant and her daughter.

The same night, Detective White was dispatched to the hospital to interview Appellant.  Before meeting with Appellant, the only information Detective White had received was "that there had been a family violence incident at a residence" and that Appellant had been stabbed.  Detective White was not told to arrest Appellant or informed that Appellant would be arrested.

After arriving at the hospital, Detective White spoke to Appellant's nurses, who told him that Appellant was in stable condition and in no life-threatening danger.  Detective White was told the knife in Appellant's back had been removed using local anesthetic.

When he met with Detective White, Appellant was located in a private hospital room and was not hooked up to any machines. Doctors and nurses entered and left Appellant's room while Detective White was present.  Detective White said he "introduced himself" and told Appellant he "wanted to get a statement from

5

[Appellant] regarding what happened at the residence and take pictures of his wound." Appellant said he would give Detective White a statement. Detective White provided the following description of his conversation with Appellant:

- Detective White met with Appellant one-on-one for about 30-45 minutes.

- Detective White felt that Appellant was "comfortable" speaking with him. Detective White said he did not force Appellant or tell Appellant that he was obligated to provide a statement.

- Appellant did not seem confused and volunteered information.

- Appellant "seem[ed] to understand" Detective White and gave appropriate responses.

- Appellant's speech was slurred and Detective White smelled alcohol. Appellant told Detective White he was intoxicated.

The audio recording of Appellant's conversation with Detective White also was admitted at the suppression hearing. In the tape, Appellant provides a narrative regarding the events that had occurred that night. Appellant said he and Complainant both were drinking when their argument escalated and they began shoving each other. In the recording, Appellant is coherent; provides an orderly description of events; and responds appropriately to Detective White's questions. Several times during the recording, Appellant states that he wants certain statements "on the record." The recording does not suggest that Appellant was forced or compelled to speak with Detective White.

After the close of evidence, the trial court made the following findings of fact:

- Deputy La Rosae and Detective White are credible witnesses.

- Before meeting with Appellant at the hospital, Detective White was told Appellant (1) received non-life-threatening injuries; (2) had a knife blade removed using local anesthetic; and (3) would be discharged that evening.

6

- Detective White informed Appellant of the reason for his presence and Appellant voluntarily provided a statement.

- Detective White did not coerce or threaten Appellant to make a statement.

- Detective White observed Appellant speaking coherently, providing appropriate answers, and contributing thoughts and information in a logical fashion.

The trial court concluded Appellant's statements to Detective White at the hospital were freely and voluntarily given.

Viewing the evidence in the light most favorable to these findings, we conclude they are adequately supported by the record. The only witnesses that testified at the suppression hearing were Deputy La Rosae and Detective White — no evidence was admitted that would counsel again the trial court's findings. The audio recording also supports the trial court's findings and indicates Appellant's statements were not the product of coercive police conduct. Deferring to these findings, the trial court's ultimate conclusion that Appellant's statements were freely and voluntarily made is reasonably supported by the record and does not constitute an abuse of discretion.

Appellant argues that his statements were not freely given because he was "medicated by anesthesia and intoxicated with alcohol." But the record indicates that only a local anesthetic was used to remove the knife in Appellant's back — the evidence does not suggest this would have impaired Appellant's ability to participate in the interview. The record does not show Appellant was on any other medication when he spoke with Detective White.

Detective White acknowledged that Appellant appeared intoxicated and Appellant stated on the audio recording that he was intoxicated. But Appellant does not cite any case law or other authority showing that intoxication alone

7

renders a statement involuntary. Rather, for this determination, we examine the totality of the circumstances under which the statement was made. *See Avellaneda*, 496 S.W.3d at 316. Here, the other circumstances surrounding Appellant's interview adequately support the trial court's conclusion that Appellant's statements were freely and voluntarily made.

We overrule Appellant's first issue.

## II.      Motion to Quash the Indictment

Arguing the trial court erred in denying his motion to quash, Appellant asserts the indictment lacked specificity as to the manner and means in which the charged offenses were committed. The indictment states as follows:

Count I

Paragraph A

in a bedroom, [Appellant] did then and there intentionally or knowingly threaten [Complainant] with imminent bodily injury while using or exhibiting a deadly weapon, to wit: [Appellant's] hand or hands, during the commission of said assault, and [Complainant] was a member of the [Appellant's] family, household, or person with whom the [Appellant] had a dating relationship;

Paragraph B

in a bedroom, [Appellant] did then and there intentionally or knowingly threaten [Complainant] with imminent bodily injury while using or exhibiting a deadly weapon, to wit: a comb, during the commission of said assault, and [Complainant] was a member of [Appellant's] family, household, or person with whom the [Appellant] had a dating relationship;

Count II

Paragraph A

in or near the garage, [Appellant] did then and there intentionally or knowingly threaten [Complainant] with imminent bodily injury while using or exhibiting a deadly weapon, to wit: [Appellant's] hand or

8

hands, during the commission of said assault, and [Complainant] was a member of the [Appellant's] family, household, or person with whom the [Appellant] had a dating relationship;

Paragraph B

in or near the garage, [Appellant] did then and there intentionally or knowingly threaten [Complainant] with imminent bodily injury while using or exhibiting a deadly weapon, to wit: a comb, during the commission of said assault, and [Complainant] was a member of [Appellant's] family, household, or person with whom the [Appellant] had a dating relationship;

Appellant contends the indictment fails to specify whether he "in fact used a deadly weapon" or "merely exhibited a deadly weapon."

## A.    Standard of Review and Governing Law

The sufficiency of an indictment is a question of law we review *de novo*. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

An accused is entitled to fair notice of the charged offense. Tex. Const. art. 1, § 10. The charging instrument must sufficiently convey this notice so the accused may prepare his defense and should set forth the offense "in plain and intelligible words." Tex. Code. Crim. Proc. Ann. art. 21.02(7) (Vernon 2009); *State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008). An indictment is sufficient if it charges the commission of an offense "in ordinary and concise language of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged." Tex. Code Crim. Proc. Ann. art. 21.11 (Vernon 2009).

Generally, an indictment is legally sufficient if it tracks the language of the statute in question. *Moff*, 154 S.W.3d at 602. An indictment must go beyond the statutory language only when the statute is "not completely descriptive of the offense." *State v. Stukes*, 490 S.W.3d 571, 574 (Tex. App.—Houston [14th Dist.]

9

2016, no pet.). The statutory language is not completely descriptive if it uses an undefined term of indeterminate or variable meaning. *Barbernell*, 257 S.W.3d at 251. Likewise, when a statute defines the manner or means of commission in several alternative ways, an indictment will fail for lack of specificity if it does not identify which of the statutory means it addresses. *Stukes*, 490 S.W.3d at 574. But an indictment is not insufficient if "the information requested in a motion to quash is essentially evidentiary in nature rather than being required for purposes of notice." *Moreno v. State*, 721 S.W.2d 295, 300 (Tex. Crim. App. 1986); *see also Murillo v. State*, No. 14-10-01067-CR, 2011 WL 3359690, at *1-2 (Tex. App.— Houston [14th Dist.] Aug. 4, 2011, no pet.) (mem. op., not designated for publication) (indictment charging appellant with the misdemeanor offense of interference with public duties not required to allege "the specific duty the officer was performing at the time of the alleged unlawful conduct").

## B. Application

The trial court did not err by denying Appellant's motion to quash the indictment.

The indictment sufficiently tracks the language of the applicable statutes. Aggravated assault with a deadly weapon is defined as follows:

(a) A person commits an offense if the person commits assault as defined in § 22.01 and the person: . . .

(2) uses or exhibits a deadly weapon during the commission of the assault.

Tex. Penal Code Ann. § 22.02(a)(2). Section 22.01 states that a person commits assault if the person "intentionally or knowingly threatens another with imminent bodily injury." *Id*. § 22.01(a)(2) (Vernon 2019). Tracking these provisions, the indictment stated Appellant "intentionally or knowingly threaten[ed]

10

[Complainant] with imminent bodily injury while using or exhibiting a deadly weapon."

Appellant argues the indictment should have specified whether he "used" or "exhibited" a deadly weapon, but Appellant does not cite any case law or other authority that supports this contention. Other cases considering similarly-worded indictments have found this language sufficient to provide notice of the charged offense. *See, e.g., St. Clair v. State*, 26 S.W.3d 89, 94 (Tex. App.—Waco 2000, pet. ref'd) (indictment stating that the defendant "did use or exhibit a deadly weapon during the commission of the assault, to-wit: a motor vehicle" legally sufficient); *see also Galvan v. State*, No. 10-13-00407-CR, 2014 WL 6872901, at *4 (Tex. App.—Waco Nov. 26, 2014, pet. ref'd) (mem. op., not designated for publication); *Edmondson v. State*, No. 11-99-00123-CR, 2000 WL 34233044, at *2 (Tex. App.—Eastland July 20, 2000, no pet.) (per curiam) (not designated for publication). Moreover, whether a threat was conveyed via the "use" or the "exhibition" of a deadly weapon is an evidentiary issue not necessary for purposes of notice. *See Moreno*, 721 S.W.2d at 300; *Murillo*, 2011 WL 3359690, at *2.

We overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's final judgment.

/s/     Meagan Hassan
         Justice

Panel consists of Justices Zimmerer, Spain, and Hassan.
Do Not Publish — Tex. R. App. P. 47.2(b).